J-S32028-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| STEVE RICHARD MCCOLLUM, JR. | : | |
| Appellant | : | No. 1307 MDA 2021 |

Appeal from the PCRA Order Entered April 3, 2019
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0005177-2011

BEFORE: PANELLA, P.J., BENDER, P.J.E., and LAZARUS, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED: DECEMBER 5, 2022**

Appellant, Steve Richard McCollum, Jr., appeals *nunc pro tunc* from the April 3, 2019 order entered following our January 9, 2018 remand, which ordered an evidentiary hearing on Appellant's outstanding claim of ineffective assistance of counsel raised under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–9546. Appointed counsel, Aaron N. Holt, Esq., has filed a **Turner/Finley**[1] "no merit" letter and a petition to withdraw. After careful review, we grant counsel's petition to withdraw and affirm the order denying PCRA relief.

---

[1] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

As set forth in our disposition of Appellant's direct appeal, Appellant was convicted of several crimes, including attempted murder, relating to the shooting of Timothy Juett on October 9, 2011.

In the early morning of October 9, 2011, Timothy Juett ("Juett") suffered a gunshot wound to the back following an altercation over a parking space. At approximately 2:39 a.m., Officer Nathan Ishman ("Officer Ishman") of the Harrisburg Police Department received a dispatch of shots fired in the area of 135 North Summit Street. Officer Ishman arrived on the scene approximately three minutes later and discovered the victim on 13th and State Street. Shortly thereafter, Hany Ahmed ("Ahmed"), a friend of the victim and witness to the incident, arrived and provided Officer Ishman with information regarding the appearance of the suspect and his vehicle. Officer Ishman put out information over the radio that the suspect was driving a white Cadillac with a blue ragtop and a license plate beginning with "J–M–R".

While en route to the scene of the shooting, Officer Mike Rudy ("Officer Rudy") of the Harrisburg Police Department observed a white Cadillac with a blue ragtop and a license plate beginning with "H–M–R" driving on the 100 block of Summit Street. Because the vehicle matched the description of the suspect vehicle, Officer Rudy followed the vehicle in his police cruiser but did not activate his lights. After approximately three blocks, the vehicle slowed down, both of its front doors opened, and its occupants attempted to flee. Officer Rudy then activated his emergency equipment. The vehicle then pulled over to the side of the road and struck a parked car. The driver fled the vehicle and dropped something on the ground as he ran. Officer Rudy then arrested the driver as he attempted to re-enter the vehicle. Once the driver of the vehicle and the remaining passengers were detained, Officer Rudy discovered a handgun in the area where he observed the driver drop something.

Once the passengers of the vehicle were detained, Officer Ishman drove Ahmed to see if he could identify any of the individuals as the shooter. With each individual handcuffed and seated on the curb, the police stood each man up individually while Ahmed observed from Officer Ishman's police cruiser. Ahmed then identified the driver of the vehicle, [Appellant], as the person responsible for shooting Juett.

- 2 -

*Commonwealth v. McCollum*, No. 646 MDA 2013, unpublished memorandum at *1 (Pa. Super. Feb. 19, 2014). After this Court affirmed Appellant's judgment of sentence on direct appeal, **see id.**, the Supreme Court of Pennsylvania rejected his petition for permission to appeal. **See Commonwealth v. McCollum**, 96 A.3d 1026 (Pa. 2014) (*per curiam*).

Appellant filed his first PCRA petition on June 24, 2015. Appointed counsel ultimately filed a **Turner/Finley** "no merit" letter and petition to withdraw, which the PCRA court granted. Appellant appealed, and we affirmed the denial of PCRA relief as to four of the five preserved claims. **Commonwealth v. McCollum**, 2018 WL 327615 (Pa. Super. Jan. 9, 2018) (unpublished memorandum). The remaining claim, which is the subject of the present appeal, had alleged that counsel provided erroneous advice regarding Appellant's right to testify at trial. Appellant's brief in support of his *pro se* petition asserted that he had been ready and willing to testify, "until counsel intervened and directed petitioner not to testify because the prosecution would impeach him with his prior 2005 federal charge and his 1995 assault charge." Memorandum of Law in Support of PCRA Petition, 6/24/15, at 2. Appellant noted that these offenses were not inherently *crimen falsi* and, thus, the advice was objectively unreasonable.[2] The PCRA court opined that counsel's

---

[2] A court must first examine the elements of a crime to determine if it is inherently *crimen falsi*. **Commonwealth v. Davis**, 17 A.3d 390, 395 (Pa. Super. 2011). If not, an examination of the underlying facts occurs "to
*(Footnote Continued Next Page)*

advice was reasonable, and that Appellant failed to prove prejudice because he did not demonstrate how his testimony would have changed the outcome of the trial.

We remanded for an evidentiary hearing. As established by *Commonwealth v. Walker*, 110 A.3d 1000 (Pa. Super. 2015), the pertinent legal question is "whether the result of the *waiver proceeding* would have been different absent counsel's ineffectiveness, not whether the outcome of the trial itself would have been more favorable had the defendant taken the stand." *Id.* at 1005 (emphasis in original). Our decision also recognized that an evidentiary hearing was needed to determine whether counsel had informed Appellant that the prior convictions were admissible. *McCollum*, 2018 WL 327615, at *3 ("[W]e cannot deem [Appellant's] decision not to testify as either knowing or intelligent where counsel allegedly advised [Appellant] not to testify based on the incorrect belief that the Commonwealth would impeach him on his prior non-*crimen falsi* convictions.").

The PCRA court held an evidentiary hearing on November 18, 2018. Appellant and trial counsel, Ari Weitzman, Esq., testified. Appellant related that he informed Attorney Weitzman of his desire to testify at trial. Counsel

---

determine if dishonesty or false statement facilitated the commission of the crime." *Id*. Appellant's prior convictions are not inherently *crimen falsi* crimes, and there is no suggestion that the facts of the convictions would render them *crimen falsi*. We therefore accept, for purposes of our disposition, that the convictions could not have been admitted as *crimen falsi*.

told him that, "if you [testify,] they'll be able to use your criminal record against you." N.T. Remand Hearing, 11/18/18, at 17. However, Attorney Weitzman "didn't go into explaining it, like, how they could or … couldn't do anything." *Id.* at 18. Appellant stated that, had he known his prior convictions were not admissible for impeachment as *crimen falsi*, "I would have never said I didn't want to testify." *Id.* at 19.

Attorney Weitzman testified that he always instructs his clients that the decision to testify is theirs alone and explains that criminal convictions can be introduced under some circumstances. "I describe to a defendant that most of your criminal history is not admissible other than the *crimen falsi*, unless of course you open the door." *Id.* at 29. For example, "I steer people away from saying, I would never … do anything illegal; I would never disrespect somebody. If you testify, don't say those things because your priors can ultimately come in on that basis." *Id.* at 29-30. Turning to the particulars of this trial, counsel was "certain" that he had this conversation with Appellant. *Id.* at 30.

Counsel also stated that he was aware that Appellant's convictions were not *crimen falsi* and could not have been introduced absent Appellant's opening the door. *Id.* He additionally explained that in most cases, he reserves advising the client on whether to testify based on how the trial goes. "I ... tell clients, it's a game-time decision whether or not you testify. Let's see how the trial goes ... let's see if your testimony could potentially be helpful

or hurtful." *Id.* at 31. Attorney Weitzman advised Appellant not to testify for multiple reasons. First, "I thought the case went as well as it possibly could have with the hand that ultimately was dealt to us, so to speak." *Id.* at 34. Second, Mr. Weitzman alluded to his testimony throughout that Appellant could be volatile. His notes reflected that Appellant would not entertain a plea offer and wished to go to trial. Following a suppression hearing challenging the identification procedure, the two met and Appellant "became enraged and left the meeting room." *Id.* at 25. Appellant "was prone to get quite emotional during our meetings," *id.* at 26, and those observations factored into his advice. "I was concerned about [Appellant's] demeanor on how he would come across in front of a jury. I didn't have the ability to ultimately control his emotions." *Id.* at 35.

The PCRA court issued an order on April 3, 2019, denying Appellant's claim. The PCRA court concluded that Attorney Weitzman "credibly testified as to … his ultimate recommendation that [Appellant] not testify at trial, which did not include a statement that [Appellant]'s non-*crimen falsi* prior convictions would be admissible if he testified." Order, 4/3/19 at 1. The order further determined that counsel's advice not to testify was reasonable under the circumstances. *Id.* at 2.

Before determining whether counsel complied with the **Turner/Finley** requirements, we set forth the procedural irregularities that resulted in this *nunc pro tunc* appeal. Following our remand, counsel filed a motion to amend

- 6 -

the PCRA petition to add a claim of newly-discovered evidence. The April 3, 2019 order disposing of the remand claim advised Appellant of his right to appeal within thirty days while clarifying in a footnote that the "[a]mended PCRA petition" was not dismissed by this order. No appeal was filed. Meanwhile, litigation of the after-discovered evidence claim proceeded, concluding on August 23, 2019, when the PCRA court denied relief. On September 23, 2019, Appellant attempted to file a single notice of appeal from that order, which purported to also appeal from the April 3, 2019 order. That appeal was erroneously filed with this Court, and we transferred it to the PCRA court. Instead of docketing the appeal, the PCRA court sent the notice of appeal to Appellant's counsel. On September 24, 2019, counsel filed a motion to withdraw, and was permitted to do so. In November of 2019, Appellant inquired about the status of his appeal. The PCRA court construed this as a PCRA petition and *sua sponte* reinstated Appellant's right to appeal from the August 23, 2019 order *nunc pro tunc*. Appellant then filed a *pro se* notice of appeal.

On December 29, 2020, we quashed that appeal. **Commonwealth v. McCollum**, No. 1889 MDA 2019, unpublished memorandum at *1 (Pa. Super. Dec. 29, 2020). We held that the PCRA court exceeded the scope of our remand order when it permitted Appellant to raise a new claim via amendment. **Id.** at *4. The April 3, 2019 order had completed our remand directive and was therefore an appealable final order. We declined to hold

that a breakdown in the court system caused the consequent errors, as the April 3, 2019 order correctly informed the Appellant that he had thirty days to file a notice of appeal. "Rather, it was counsel who, according to Appellant's response to our show cause order, relayed misinformation about the timeframe for appeal." *Id.* at *5.

Appellant thereafter filed a *pro se* PCRA petition on February 8, 2021, asserting that the petition satisfied the time-bar exceptions for both newly-discovered facts and governmental interference. *See* 42 Pa.C.S. § 9545(b)(1)(i-ii). Petitioner requested "to have his PCRA appeal rights reinstated." *Pro se* PCRA Petition, 2/8/21, at 10. Notably, the Commonwealth filed a response stating that it did "not object to reinstating [Appellant]'s direct appeal rights with regard to the April 3, 2019 order dismissing [Appellant]'s PCRA petition[.]" Commonwealth's Answer, 9/13/21, at 1. On September 15, 2021, the PCRA court granted Appellant's request and ordered that Appellant's "appeal rights are reinstated." Order, 9/15/21, at 1. Appellant filed a *nunc pro tunc* appeal from the April 3, 2019 order on October 8, 2021.

Attorney Holt[3] has filed a motion to withdraw from representing Appellant and a **Turner/Finley** brief, stating that the following, single issue that Appellant seeks to raise on appeal is meritless:

---

[3] This Court entered an order on February 17, 2022, directing the PCRA court to determine if Appellant's prior counsel had abandoned Appellant, as no brief had been filed by that attorney. On March 22, 2022, the PCRA court appointed Attorney Holt to represent Appellant.

1. Did the [PCRA] court abuse its discretion, err, and infringe on [Appellant's] constitutional rights, including his right to due process of law under the Constitution of the United States and under the Constitution of Pennsylvania, by denying [Appellant's] petition for relief pursuant to the [PCRA] on … when [Appellant] presented sufficient evidence of trial counsel's ineffective assistance of counsel in advising [Appellant] not to testify at trial?

*Turner/Finley* Brief at 12 (unnecessary capitalization omitted).

We begin our review by determining whether Attorney Holt substantially complied with our procedural requirements. The *Turner/Finley* brief must:

(1) detail the nature and extent of counsel's review of the case; (2) list each issue the petitioner wishes to have reviewed; and (3) explain counsel's reasoning for concluding that the petitioner's issues are meritless. Counsel must also send a copy of the brief to the petitioner, along with a copy of the petition to withdraw, and inform the petitioner of the right to proceed *pro se* or to retain new counsel. If the brief meets these requirements, we then conduct an independent review of the petitioner's issues.

*Commonwealth v. Knecht,* 219 A.3d 689, 691–92 (Pa. Super. 2019).

Attorney Holt has complied with the procedural requirements. The brief certifies that he "thoroughly reviewed" the claim and the record, determined that the claim lack merit, and explains why he considers the issue meritless. Counsel attached a copy of the letter sent to Appellant, which indicates that he provided Appellant with copies of the "no merit" brief and the motion to withdraw. The letter also informs Appellant that he has the right to proceed *pro se* or through retained counsel. Accordingly, we proceed to determine if we agree with Attorney Holt's assessment that Appellant's issue is meritless.

This Court's standard of review is well-settled.

> This Court analyzes PCRA appeals in the light most favorable to the prevailing party at the PCRA level. Our review is limited to the findings of the PCRA court and the evidence of record and we do not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. Similarly, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary. Finally, we may affirm a PCRA court's decision on any grounds if the record supports it.

*Commonwealth v. Benner*, 147 A.3d 915, 919 (Pa. Super. 2016) (citation omitted). The principles applicable to Appellant's ineffectiveness claim are equally well-settled. The petitioner "must plead and prove, by a preponderance of the evidence, three elements: (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered prejudice because of counsel's action or inaction." *Commonwealth v. Krock*, 282 A.3d 1132, 1137 (Pa. Super. 2022) (cleaned up).

We first discuss the procedural irregularities giving rise to the PCRA reinstatement of appellate rights, as it implicates jurisdictional principles. *Commonwealth v. Beatty*, 207 A.3d 957, 961 (Pa. Super. 2019) ("[T]he timeliness of any PCRA petition is a jurisdictional prerequisite. No court has jurisdiction to review an untimely PCRA petition.") (citations omitted). *See also Bisher v. Lehigh Valley Health Network, Inc.*, 265 A.3d 383, 400 (Pa. 2021) ("[S]ubject-matter delineations must be policed by the courts on

their own initiative even at the highest level.") (quoting **Ruhrgas AG v. Marathon Oil Co.**, 526 U.S. 574, 583 (1999)).

While the Commonwealth did not contest the application of the time-bar exception and conceded reinstatement of appellate rights, our Supreme Court's decision in **Commonwealth v. Reid**, 235 A.3d 1124 (Pa. 2020), suggests that we have an independent obligation to review the timeliness of the underlying petition. **Id.** at 1143 ("[I]t is appropriate for an appellate court to consider *sua sponte* the timeliness of a PCRA petition from which *nunc pro tunc* appellate rights have been reinstated, even where the Commonwealth has not separately appealed (or appeals but then withdraws its appeal) from the order granting relief."). This case differs from **Reid** as the Commonwealth did not appeal or otherwise contest the timeliness of the PCRA petition, but it appears that the Commonwealth's concession cannot relieve this Court of its duty to independently determine the correctness of the jurisdictional question. **Cf**. **Commonwealth v. Brown**, 196 A.3d 130, 146 (Pa. 2018) (declining to accept Commonwealth's concession; "a district attorney's concession of error is not a substitute for independent judicial review").

We agree that the PCRA court did not commit an error of law in finding that Appellant's petition seeking reinstatement of his PCRA appellate rights satisfied a time-bar exception. We find that PCRA counsel abandoned Appellant. The general principle that attorney abandonment can qualify as a newly-discovered fact was firmly established in **Commonwealth v. Bennett**,

930 A.2d 1264 (Pa. 2007), which involved appointed counsel's failing to file an appellate brief challenging a PCRA denial, causing Bennett's appeal to be dismissed. Bennett then filed an untimely PCRA petition seeking restoration of his appellate rights. Our Supreme Court held that abandonment may serve as the factual predicate for triggering the newly-discovered-fact exception. **Bennett** "recognized a distinction between situations in which counsel has narrowed the ambit of appellate review by the claims he has raised or foregone versus those instances, as here, in which counsel has failed to file an appeal at all." **Id.** at 1273. Cases involving the former cannot trigger the newly-discovered-facts exception without eviscerating the legislative intent to accord finality to the criminal process. However, where counsel has abandoned the client, the litigant has suffered a complete denial of counsel. In those scenarios, applying the newly-discovered-fact exception to the time-bar represents "a limited extension of the one-year time requirement under circumstances when a petitioner has not had the review to which he was entitled due to a circumstance that was beyond his control." **Id.**

In **Commonwealth v. Peterson**, 192 A.3d 1123 (Pa. 2018), the Supreme Court of Pennsylvania applied **Bennett** in a case where PCRA counsel filed the PCRA petition one day late. The Court held that **Bennett's** conception of "abandonment" is not limited to scenarios where counsel simply fails to take any action (as in **Bennett**). "Abandonment, however, is only one form of ineffectiveness *per se*, and our decision in **Bennett** did not limit its

- 12 -

application to instances of attorney abandonment." **_Id._** at 1131. The record in this case establishes that counsel believed that the amendment to the PCRA petition, later deemed a legal nullity, was valid.

> **ATTORNEY CLARKSON:** I believe [Appellant is] also asking about the fact that there were two separate orders issued because we had raised two separate PCRA petitions. My understanding of how the Superior Court would interpret it is since the docket – it was one case. Even though it was two PCRA petitions, the docket is what is going to control. The docket was still open here in Dauphin County after the first order was issued, making it not final for an appeal until now.

N.T., 10/17/19, at 8-9.

This is ineffectiveness *per se* and constitutes "abandonment" under **_Bennett_**. As a result of the erroneous belief that the April 3, 2019 order was not final, counsel failed to appeal the order resolving the remand. In turn, this ineffectiveness resulted in the total deprivation of appellate review. The fact that Appellant enjoyed appellate review of his other PCRA claims does not, in our view, foreclose application of the **_Bennett_** line of cases. Counsel's error prevented any appellate review of Appellant's outstanding PCRA claim. Appellant "has not had the review to which he was entitled due to a circumstance that was beyond his control." **_Bennett_**, 930 A.2d at 1273. Thus, we find that the PCRA court did not err in concluding that an exception to the time-bar applied, and we therefore have jurisdiction to entertain the merits of this appeal.

Turning to the ineffectiveness claim, we agree with Attorney Holt that it lacks merit following the PCRA court's credibility findings. While counsel has wide latitude to try a case as he or she sees fit, there is no doubt that the right to testify is one decision over which the criminal defendant has the final say. "Some decisions, however, are reserved for the client—notably, whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal." *McCoy v. Louisiana*, 138 S.Ct. 1500, 1508 (2018) (citation omitted). Counsel's role is limited to advising the client whether to exercise that right. Thus, when addressing an ineffectiveness claim, the allegation can involve either an interference with the absolute nature of the right to testify or a claim that the advice given was so unreasonable that the waiver of the right to testify was not truly knowing and voluntary. *Commonwealth v. Nieves*, 746 A.2d 1102, 1104 (Pa. 2000). The former theory is not at issue.

Appellant's ineffectiveness claim was premised on the notion that trial counsel unreasonably informed Appellant that his prior convictions for firearms violations and aggravated assault were admissible *per se* as *crimen falsi*. Attorney Weitzman's testimony contradicted that claim and the PCRA court specifically credited that testimony. We cannot overturn credibility determinations that find support in the record. *Commonwealth v. Chmiel*, 30 A.3d 1111, 1127 (Pa. 2011) ("The PCRA court's credibility determinations are binding on this Court when they are supported by the record.").

We note that Appellant's response to the **Turney/Finley** brief asserts that our remand decision had already decided that point in his favor. According to Appellant, "the scope of the remand was for the PCRA court to determine whether counsel's erroneous advice was reasonable." *Pro se* Response to **Turner/Finley** Brief, 8/29/22, at 11. However, our remand order explicitly recognized that Appellant merely alleged that counsel misunderstood the law. **McCollum**, 2018 WL 327615, at *3 (deeming a hearing necessary because "counsel **allegedly advised** McCollum not to testify based on the incorrect belief that the Commonwealth would impeach him on his prior non-*crimen falsi* convictions") (emphasis added). The PCRA court's credibility findings make clear that counsel was not ignorant of the applicable law when advising Appellant not to testify. Contrast this with **Commonwealth v. Washington**, 269 A.3d 1255, 1261 (Pa. Super. 2022) (*en banc*), wherein counsel mistakenly believed that a prior conviction for aggravated assault was *per se* admissible for impeachment purposes as *crimen falsi*. No such misapprehension is present here.

Finally, we conclude that to the extent Appellant has preserved any argument that counsel's advice was otherwise objectively unreasonable, Appellant cannot overcome the presumption of effectiveness. "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." **Strickland v. Washington**, 466 U.S. 668, 688 (1984). Counsel advised

Appellant not to testify for several reasons, including the presentation of the prosecution's case and counsel's cross-examination of the witnesses, the relatively low value of the testimony that Appellant would offer, and his inability to ensure that Appellant would not "open the door" to other convictions. *See Commonwealth v. Barnett*, 121 A.3d 534, 551 (Pa. Super. 2015) ("[W]hether [the a]ppellant could withstand vigorous cross-examination was a legitimate concern."). Considering these circumstances, advising Appellant to remain silent was objectively reasonable.

Order affirmed. Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/05/2022