J-S24021-22

2022 PA Super 153

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                           :           PENNSYLVANIA
                                             :
              v.                             :
                                             :
                                             :
SHELDON KROCK                          :
                                             :
              Appellant                    :    No. 2044 EDA 2021

Appeal from the PCRA Order Entered June 16, 2021
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0001295-2017

BEFORE:    PANELLA, P.J., LAZARUS, J., and PELLEGRINI, J.[*]

OPINION BY LAZARUS, J.:                       **FILED SEPTEMBER 7, 2022**

Sheldon Krock appeals from the order, entered in the Court of Common Pleas of Lehigh County, dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. After careful review, we affirm.

The trial court summarized the facts of this tragic case as follows:

[O]n August 19, 2016, at approximately 11:40 P.M., Michael Johnson, Sr., a tractor trailer driver who hauls cement and makes daily trips to Keystone Cement located in Bath, Northampton County, Pennsylvania, was traveling westbound on Route 22. There was construction on the highway, and an associated right [-]lane closure that was posted on the roadway. [Commonwealth Exhibits 2, 35 (photographs of road signage); N.T. [Jury Trial], 6/19/2018, at 57]. Therefore, Mr. Johnson moved his tractor trailer to the left lane of travel. At that time, a red Chevrolet Cruz[e] sedan was in front of Mr. Johnson's tractor trailer. He witnessed a red Ford F-150, dual-cab pick-up truck and a couple

_____

[*] Retired Senior Judge assigned to the Superior Court.

of other vehicles pass him in the right lane of travel that was going to end as a result of the road work. Suddenly, the red Ford F-150 pick-up truck moved into the left lane of travel and struck the side of the 2014 red Chevrolet Cruz[e]. The red Ford F-150 pick-up truck consequently flipped over and pushed the Chevrolet Cruz[e] into the concrete wall barrier. C[ommonwealth] Ex. 39. The Ford F-150 pick-up truck rolled over several times and came to rest on [its] roof.

After the collision, Mr. Johnson heard children yelling from the red Ford F-150 pick-up truck, so he exited his tractor trailer and ran over to the rear of the pick-up truck to render assistance. There were three (3) children in the Ford F-150 pick-up truck, appearing to range in approximate age from two (2) to seven (7) years old. . . . At approximately 11:40 P.M., Trooper Joseph Mitzak of the Pennsylvania State Police, Bethlehem Barracks, was requested to respond in full uniform and a marked police cruiser to this crash site on Route 22 westbound near the Fullerton Avenue exit, Hanover Township, Lehigh County, Pennsylvania. Upon arriving, Trooper Mitzak observed a chaotic scene. [Commonwealth Exhibits 1-35 (photographs)]. Specifically, there were four (4) vehicles involved in the crash, including a red Ford F-150 pick-up truck that was on its roof facing in a southern direction, a Chevrolet Cruz[e] occupied by William and Traci Fritz, a Mazda 3, and a Volvo. [Commonwealth Exhibits 40-45 (photographs showing damage to the F-150, where the roof collapsed, and to the Volvo S40); N.T. [Jury Trial], 6/19/2018, at 68-70.]. At the time that Trooper Mitzak arrived on scene, two (2) people remained inside the Ford F-150 pick-up truck: [[Krock], who was the] registered owner of the Ford F-150 pick-up truck[,] and a female, Renee Tenasse. [[Krock]] was trapped in the driver seat of the vehicle. In addition, three (3) young children were sitting on the berm of the highway near the guardrail. Trooper Mitzak engaged [[Krock]] in general conversation in an effort to keep him calm before the extrication process began. [Krock]] stated that he was the driver of the vehicle. Ultimately, [Krock] was extricated from the vehicle with the help of members of the Han-Le Company Fire and Rescue, the Bethlehem EMS, and the Pennsylvania State Police. Paramedic Jason Hadinger of the Bethlehem EMS transported [[Krock]] to the Lehigh Valley Hospital-Cedar Crest Campus for medical attention. When Paramedic Hadinger was tending to [[Krock]]'s medical care, he detected a strong odor of alcohol emanating from his person. Upon [Krock]'s arrival at the Lehigh Valley Hospital trauma unit,

Michelle Greis, R.N., drew blood from [Krock] in accordance with hospital policy, as all trauma patients are subjected to a blood draw. [Krock]'s blood was drawn at 12:34 A.M. on August 20, 2016. [Commonwealth Exhibit 46 (blood alcohol and toxicology report - chain of custody)]. This blood draw is part of a kit in which nine (9) tubes of blood are drawn. The medical purpose for the blood draw is to determine if there is alcohol or controlled substances in a patient's system which could mask an injury. Two (2) of the nine (9) tubes were set aside in the event that blood was needed for legal purposes, and was not immediately tested.

Approximately two (2) to three (3) hours after the accident, at 2:40 A.M., Trooper Mitzak applied for and obtained a search warrant for [Krock]'s blood in order to obtain a blood alcohol content analysis. At 3:05 A.M. on August 20, 2016, a separate blood draw was performed at Lehigh Valley Hospital-Cedar Crest Campus. The results of this blood draw revealed a blood alcohol content of .06%. Trooper Mitzak was unaware that blood had previously been drawn from [Krock] by Michelle Greis, R.N.

Additionally, Trooper Mitzak had an opportunity to speak with [Krock] at Lehigh Valley Hospital-Cedar Crest Campus. At that time, Trooper Mitzak advised [Krock] that he was not in custody and that he did not have to speak with him. Nevertheless, [Krock] agreed to speak with Trooper Mitzak. [Krock] told Trooper Mitzak that he had hosted a barbecue at his house in Easton and he had consumed a few alcoholic beverages the evening in question. He also admitted to being the operator of the vehicle and he stated that two (2) of the passengers had an argument in the vehicle before the crash.

On September 8, 2016, Trooper Mitzak applied for and obtained a second search warrant for [Krock]'s blood that was drawn at 12:34 A.M. on August 20, 2016. [Krock]'s blood alcohol content at that time was .11%. [Commonwealth Exhibit 47 (laboratory analysis form for blood alcohol/controlled substance).]

Trooper William Hoogerhyde of the Pennsylvania State Police, Troop M, Fogelsville Barrack, an expert in the area of Accident Reconstruction, arrived on scene around 1:06 A.M. in order to perform an accident reconstruction. [Commonwealth Exhibit 36 (Trooper Hoogerhyde's curriculum vitae)]. Based on his analysis of the scene, as well as having performed a mechanical inspection of the vehicles involved, Trooper Hoogerhyde found that there was no defect in the Ford F-150 pick-up or red Chevrolet Cruz[e] that

would have contributed to the collision. He opined that the crash occurred when the Ford F-150 pick-up truck moved into the left lane of travel and struck the red Chevrolet Cruz[e], pushing that vehicle into the concrete barrier. The Ford F-150 pick-up continued to move forward, hit the barrier, [] rolled on the right side, and flew up in the air, impacting the rear of the white Mazda 3. As a result of this impact, the white Mazda 3 struck the Volvo.

Trial Court Opinion, 8/28/18, at 4-9 (some formatting, footnotes omitted).[1]

Krock was convicted,[2] by a jury, of eleven counts of recklessly endangering another person (REAP),[3] three counts of endangering the welfare of a child (EWOC),[4] and driving under the influence.[5] Krock was sentenced to an aggregate sentence of 16-32 years' incarceration. Krock filed post-sentence motions that were denied. He filed a timely direct appeal, raising, among other things, an issue regarding the sufficiency of the evidence as it related to his EWOC charge. Specifically, Krock challenged whether the Commonwealth presented sufficient evidence to support the finding that he "would [ha]ve been aware that the children were in circumstances that could threaten their physical well[]being." Appellant's Direct Appeal Brief, at 27,

---

[1] As a result of the accident, the mother of the three children was pronounced dead at the scene and Pierce suffered a severe ankle injury and, at the time, still could not walk without the aid of crutches. *See* Trial Court Opinion, 8/28/18, at 6 n.7.

[2] Krock was also found guilty of the following summary offenses: speeding, careless driving and reckless driving.

[3] 18 Pa.C.S. § 2705.

[4] 18 Pa.C.S. § 4304(a).

[5] Krock was charged with one count of EWOC for each of the three minors in his vehicle at the time of the accident.

30. On appeal, this Court found that Krock's claim amounted to a challenge regarding the *mens rea* element of EWOC—whether he "knowingly" endangered the welfare of a child. 18 Pa.C.S. § 4304(a)(1). However, in his Pa.R.A.P.1925(b) concise statement of errors complained of on appeal, Krock challenged a different element of the EWOC statute—whether "he was the guardian of, had control over the welfare of the children, or was supervising them so as to sustain a cha[r]ge of [EWOC]." Rule 1925(b) Statement, 10/1/18, at 2 ¶ 5. Thus, our Court found that Krock failed to preserve his sufficiency claim with regard to the *mens rea* element of the offense. ***Commonwealth v. Krock***, 2668 EDA 2018, at 17 (Pa. Super. filed Aug. 6, 2019) (unpublished memorandum decision).

On August 10, 2020, Krock filed a timely *pro se* PCRA petition. Counsel was appointed and filed an amended petition raising the single issue of whether appellate counsel, Michael E. Brunnabend, Esquire, was ineffective for failing to preserve and litigate the proper sufficiency of the evidence claim with regard to Krock's EWOC conviction. On April 23, 2021, the trial court held a PCRA hearing at which Attorney Brunnabend testified. On June 16, 2021, the court denied Krock's petition, concluding that even if Krock's appellate counsel had pursued the issue on appeal, it would not have been meritorious and would not have resulted in him obtaining relief on appeal. Trial Court Opinion, 6/16/21, at 13.

Krock filed this timely appeal, presenting the following issue for our consideration: "Whether the PCRA [c]ourt erred when it denied [Krock's]

[a]mended PCRA [p]etition, seeking post-conviction relief due to ineffective assistance of [a]ppellate [c]ounsel, based on its determination that [Krock] failed to establish the prejudice prong of the ineffective assistance of counsel test and without reaching the other factors[.]  Appellant's Brief, at 4.

"Our standard of review from the grant or denial of post-conviction relief is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." *Commonwealth v. Ousley*, 21 A.3d 1238, 1242 (Pa. Super. 2011).  "To prevail on . . . [ineffective assistance of counsel] claims, [the PCRA petitioner] must plead and prove, by a preponderance of the evidence, three elements: (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) [the petitioner] suffered prejudice because of counsel's action or inaction." *Commonwealth v. Spotz*, 18 A.3d 244, 260 (Pa. 2011).  "The law presumes counsel was effective[,]" *Commonwealth v. Miner*, 44 A.3d 684, 687 (Pa. Super. 2012), and PCRA petitioners "bear[] the burden of pleading and proving each of the three . . . factors by a preponderance of the evidence." *Commonwealth v. Perry*, 128 A.3d 1285, 1289 (Pa. Super. 2015).  "A claim of ineffectiveness will be denied if the petitioner's evidence fails to meet any of these prongs." *Commonwealth v. Williams*, 980 A.2d 510, 520 (Pa. 2009).

Krock claims that counsel was ineffective for failing to challenge the sufficiency of the evidence of his EWOC conviction, specifically, the "duty" element of the statute.  Krock argues that the mere fact that he was driving

the vehicle in which the three children were injured does not make him a "supervisor of the welfare of a child" for purposes of EWOC. Moreover, Krock asserts that, since this is an issue of first impression in this Commonwealth, "in the absence of controlling precedent, no entity other than this Court can truly say if [Krock's] underlying issue is meritorious or not." Appellant's Brief, at 9-10. Relying on **Commonwealth v. Parrish**, 224 A.3d 682 (Pa. 2020), Krock contends that this Court should deem appellate counsel's omission as *per se* ineffectiveness that requires us to remand the matter for the reinstatement of his direct appeal rights *nunc pro tunc*. **Id.** at 10-11.

When a matter involves the interpretation of a statute, our standard of review is *de novo* and the scope of review is plenary. Moreover, it is axiomatic that, in interpreting a statute, the court's objective is to ascertain and give effect to the intent of the General Assembly. **See** 1 Pa.C.S. § 1921(a). The best expression of this intent is found in the statute's plain language. Finally, a court may not disregard a statute's plain language under the guise of giving effect to its spirit. **Id.** at § 1921(b).

Section 4304 defines the crime of EWOC as follows:

(a) Offense defined — **A** parent, guardian, or other **person supervising the welfare of a child** under 18 years of age commits an offense if he knowingly endangers the welfare of the child by violating the duty of care, protection, or support.

18 Pa.C.S. § 4304(a)(1). To support an EWOC conviction, the Commonwealth must establish each of the following elements:

(1) **the accused is aware of his/her duty to protect the child**; (2) the accused is aware that the child is in circumstances that could threaten the child's physical or psychological welfare; and (3) the accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare.

*Commonwealth v. Wallace*, 817 A.2d 485, 490-91 (Pa. Super. 2002) (citations and internal quotation marks omitted) (emphasis added).

It is well-established that child welfare statutes, such as EWOC, are "designed to cover a broad range of conduct in order to safeguard the welfare and security of . . . children." *Commonwealth v. Mack*, 359 A.2d 770, 772 (Pa. 1976).[6] In determining what conduct violates section 4304, "the common sense of the community, as well as the sense of decency, propriety, and the morality which most people entertain is sufficient to apply the statute to each particular case, and to individuate what particular conduct is rendered criminal by it." *Commonwealth v. Howard*, 257 A.3d 1217, 1222 n.9 (Pa. 2021), citing *Commonwealth v. Marlin*, 305 A.2d 14, 18 (Pa. 1973).

---

[6] Section 4302 is a specific intent crime, requiring a *mens rea* of "knowingly" for purposes of culpability. *See Commonwealth v. Matir*, 712 A.2d 327, 329 (Pa. Super. 1998). Under the Crimes Code,

(2) A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

18 Pa.C.S. § 302(b)(2), (3).

Here, it is undisputed that Krock was not the parent of or legal guardian of any of the children injured in his vehicle. Rather, the issue on appeal concerns whether Krock was "[an] other person supervising the welfare of [the] child[ren]," 18 Pa.C.S. § 4303(a)(1), at the time of the accident. We conclude that he was and, thus, that the evidence was sufficient to convict him of EWOC.

Krock, himself, told Trooper Mitzak that he had consumed "a few alcoholic beverages at his house" on the evening of the accident. N.T. Trial, 6/19/18, at 184. Krock also stated to a paramedic that he had consumed six beers earlier that evening and that he became distracted when two of the passengers in the truck began arguing. *Id.* at 102. Pierce testified at trial that he witnessed Krock drink beer earlier that day, *id.* at 136, and, that for about 15 to 20 minutes prior to the accident, Krock was "swerving in between lanes [and] going pretty fast." *Id.* at 138-39. Pierce also testified that he yelled at Krock to "stop or pull over, or let [the children's mother] drive." *Id.* Finally, Pierce testified that he heard the children's mother tell Krock immediately before the collision that "she don't [sic] want to die [and,] if you can[,] pull over." *Id.* at 139. *See also id.* at 165-66 (accident reconstruction expert, Trooper Hoogerhyde, opining "that the pickup truck was actually travelling in the right lane of westbound [Route] 22" while the other vehicles involved in the collision "were travelling in the left lane of [Route] 22 [and, f]or unknown reasons[,] the pickup truck went into the left lane").

Under the plain language of section 4304(a)(1), a non-parent or non-guardian has a duty to a child when that person is supervising the welfare of a child.  In ***Commonwealth v. Wallace***, 817 A.2d 485 (Pa. Super. 2002), our Court noted:

> The [EWOC] statute does not require the actual infliction of physical injury.  Nor does it state a requirement that the child or children be in imminent threat of physical harm.  Rather **it is the awareness by the accused that [his] violation of [his] duty of care, protection[,] and support is practically certain to result in the endangerment to [the] children's welfare, which is proscribed by the statute.**

***Id.*** at 491 (emphasis added).

The evidence clearly demonstrates that Krock operated his truck, under the influence of alcohol, in an unsafe manner, which caused his vehicle to crash into the red Chevrolet Cruze, pushing that vehicle into the concrete barrier, causing his truck to hit the barrier, roll over onto its right side, and fly into the air, impacting the rear of the Mazda which then struck the Volvo.  The fact that the children's now-deceased mother was an occupant of the vehicle did not relieve Krock, as the operator of the truck, of his duty to supervise the welfare of her children.  When an adult is driving a vehicle in which a child is a passenger, common sense dictates that the driver is supervising that child and, thus, has a duty of care towards those young passengers.  This is especially so because the driver controls the speed and direction of the vehicle and regulates the degree of safety in which it is operated.  ***But see Howard***, ***supra*** (evidence insufficient to sustain EWOC conviction where mother allowed three-year-old daughter ride in car-for-hire without child restraint or

child safety seat; mother's conduct could not be said to be contrary to common sense of community).[7]

Bearing in mind that the EWOC statute "cover[s] a broad range of conduct in order to safeguard the welfare and security of . . . children," we conclude that Krock was "[an] other person supervising the welfare of [the] child[ren]," for purposes of EWOC, when he operated his truck and caused the catastrophic accident at issue. 18 Pa.C.S. § 4304(a), **see also** 1 Pa.C.S. § 1921(a). As a result, counsel cannot be deemed ineffective for failing to raise this meritless claim. **Spotz**, **supra**. Thus, the court properly denied Krock's PCRA petition. **Ousley**, **supra**.

Order affirmed.

_____

[7] To the extent that Krock argues we should deem appellate counsel's representation *per se* ineffective based on **Parrish**, we are not so persuaded. In **Parrish**, our Supreme Court held that where counsel's Rule 1925(b) statement was so vague as to render all of the capital defendant's claims waived for purposes of appeal, the reinstatement of the defendant's appellate rights to file a Rule 1925(b) statement *nunc pro tunc* was the proper form of relief under the PCRA. **Parrish**, 224 A.3d at 702. Here, counsel's actions did not result in the waiver of all of Krock's claims on direct appeal. In fact, he had sufficiency of the evidence claims for REAP and EWOC (with regard to recklessness of his actions) and an evidentiary challenge (excited utterance) addressed on the merits. **See Krock**, **supra** at *11-*15, *21-*24.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/07/2022</u>