J-A08044-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                   : PENNSYLVANIA
                                                   :
                              v.                   :
                                                   :
                                                   :
                                                   :
JUSTIN D. SCHOENFELD                               :
                                                   :
                       Appellant                   : No. 783 WDA 2022

Appeal from the Judgment of Sentence Entered May 12, 2022
In the Court of Common Pleas of Cambria County Criminal Division at
No(s):  CP-11-CR-0001055-2020

BEFORE:  STABILE, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED: MARCH 29, 2023**

Justin D. Schoenfeld (Schoenfeld) appeals from the judgment of

sentence imposed in the Court of Common Pleas of Cambria County (trial

court) after a jury convicted him of two counts of endangering the welfare of

children (EWOC).  On appeal, he challenges (1) the sufficiency and weight of

the evidence for his convictions, and (2) the trial court's denial of his motion

for mistrial based on a police officer's testimony that he was committed for a

mental health evaluation.  After review, we affirm.

**I.**

On August 11, 2020, around 10:00 p.m., Schoenfeld's neighbor called

the police after hearing several gunshots.  When the neighbor went out to

_____

[*] Retired Senior Judge assigned to the Superior Court.

investigate, he heard the shots getting closer and eventually saw muzzle flashes near his property line with Schoenfeld. When the police arrived, Schoenfeld told them that he had been firing at targets outside and that his firearms were inside his trailer now.

The police next spoke to Barbara Weakland (Weakland), who lived with Schoenfeld in the trailer with their two sons, who were ages five and seven. When asked if Schoenfeld had any weapons, Weakland replied, "Yes, he has them there inside the trailer." As the police entered the trailer, Schoenfeld's two children were already inside and heard the police and Weakland discuss getting the firearms. At that point, the boys said, "we'll get the guns for you," and went to grab the firearms, which were no more than six feet away. Upon hearing this, the police yelled for them to stop and retrieved two firearms from behind a recliner in the living room: one an AK-47 style weapon and the other a loaded .9 mm handgun. At trial, Weakland admitted that Schoenfeld put the firearms behind the recliner because he knew the police were coming.

At the end of trial, the jury found Schoenfeld guilty of two counts of EWOC and determined that he created a substantial risk of death or serious bodily injury, thus raising the grading of the offenses to third-degree felonies.[1]

_____

[1] 18 Pa.C.S. §§ 4304(a)(1), (b)(1)(iii). The jury also found Schoenfeld guilty of disorderly conduct under 18 Pa.C.S. § 5503(a)(4) and acquitted him of three counts of recklessly endangering another person under 18 Pa.C.S. § 2705. The trial court, meanwhile, found him guilty of summary harassment under 18 Pa.C.S. § 2709(a)(3).

The trial court sentenced him to serve an aggregate 12 to 24 months in state prison followed by five years' state probation. Schoenfeld did not file any post-sentence motions but did file a timely *pro se* notice of appeal, even though he was still represented by counsel.[2] After permitting counsel to withdraw, the trial court appointed new counsel, following which both he and the trial court complied with Pa.R.A.P. 1925. On appeal, Schoenfeld raises two claims for our review on appeal.

> 1. The Trial Court erred when it denied the [Schoenfeld's] Motion for Judgment of Acquittal as it pertained to the two counts of Child Endangerment (18 Pa. C.S.A. § 4304(A)(1)) (F-3); the weight and sufficiency of the evidence presented by the Commonwealth did not warrant a conviction.
>
> 2. The Trial Court erred when it denied the [Schoenfeld's] Motion for a Mistrial when a Commonwealth witness made reference to [Schoenfeld] being committed to a mental health facility.

Schoenfeld's Brief at 6.

## II.

In his first issue, Schoenfeld challenges both the sufficiency and the weight of the evidence for his convictions. Preliminarily, we remind Schoenfeld that sufficiency and weight claims are distinct.

---

[2] The general prohibition against hybrid representation does not apply to a timely *pro se* notice of appeal. **See Commonwealth v. Williams**, 151 A.3d 621,624 (Pa. Super. 2016) (explaining that because a notice of appeal protects constitutional rights, it is distinguishable from other filings that require counsel, and this Court is required to docket a *pro se* notice of appeal despite the appellant being represented by counsel).

The distinction between these two challenges is critical. A claim challenging the sufficiency of the evidence, if granted, would preclude retrial under the double jeopardy provisions of the Fifth Amendment to the United States Constitution, and Article I, Section 10 of the Pennsylvania Constitution, whereas a claim challenging the weight of the evidence if granted would permit a second trial.

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence[ ] concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000). "A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed."

***Commonwealth v. Lewis,*** 911 A.2d 558, 566 (Pa. Super. 2006) (citation omitted).

We first consider Schoenfeld's sufficiency challenge to his EWOC convictions. Under our Crimes Code, the offense of EWOC is defined as follows: "A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if [she] knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S. § 4304(a)(1). The phrase "person supervising the welfare of a child" means a person "other than a parent or guardian that provides care, education, training or control of a child." ***Id.*** at (a)(3). To convict a defendant of EWOC, the Commonwealth must establish that he is aware of his duty to protect the child; is aware that the child is in circumstances that could threaten the child's physical or psychological welfare; and has either failed to act or has acted so weak that such actions cannot reasonably be expected to protect the child's welfare. ***See Commonwealth v. Vela-Garrett***, 251 A.3d 811, 815 (Pa. 2021).

We further note that child welfare statutes such as EWOC are designed to cover a broad range of conduct in order to safeguard the welfare and security of children. ***See Commonwealth v. Krock***, 282 A.3d 1132, 1137 (Pa. Super. 2022). In determining whether a defendant's conduct violates Section 4304, "the common sense of the community, as well as the sense of decency, propriety, and the morality which most people entertain is sufficient

to apply the statute to each particular case, and to individuate what particular conduct is rendered criminal by it." *Id.* (citation omitted). Section 4304 also does not require the actual infliction of physical injury or include a requirement that the child be in imminent threat of physical harm. *Id.* at 1139. The terms of the statute are "necessarily drawn broadly to capture conduct that ... involves the endangering of the physical or moral welfare of a child by an act or omission in violation of a legal duty." *Commonwealth v. Lynn*, 114 A.3d 796, 819 (Pa. 2015) (citation omitted). Finally, the language employed as to the endangerment of a child's welfare and a person's duty of care to that child are not esoteric and are, instead, "easily understood and given context by the community at large." *Id.* at 818 (citation omitted).

Schoenfeld first asserts that there was insufficient evidence for the jury to find that the children were in danger because Weakland was also in the trailer and was supervising them when the police arrived. For his argument, Schoenfeld focuses on this portion of Weakland's testimony.

> Q. When the police came to the house, did they find firearms in the house?
>
> A. They did.
>
> Q. And where were those firearms in – that they found in the house in relation to the children?
>
> A. They were in my living room on the floor behind a recliner.
>
> Q. And were you supervising your children?
>
> A. Yes. I was right there.

Q. And at that point, were any of them touching the firearms?

A. No.

Q. Would you have allowed them to grab the firearms?

A. No. No.

Q. And at any point during that time when the firearms were there, did you feel the need to move the firearms because they were unsafe in the proximity that the children were?

A. Did want to, no. I didn't want to go near them.

Q. Did you feel at any point the children were endangered by the proximity of the firearms?

A. No.

N.T., 3/7/22, at 65-66 (cleaned up).

Thus, Schoenfeld's argument centers on Weakland's testimony that the children were never really in danger of the nearby firearms because she was supervising them and would not have let them go near the firearms, even though they were near the children and in open view behind the recliner.

This argument, however, essentially asks us to credit Weakland's subjective opinion that the children were safe over the jury's determination that Schoenfeld placed the children in danger by leaving two firearms (one of which was loaded) only a few feet away from them out in the open. As the trial court astutely explained in rejecting this argument in its Rule 1925(a) opinion:

> The evidence presented at trial established that Schoenfeld placed a loaded handgun in an area easily accessible to his children ages five and seven and that the children were left unsupervised in the

area where the handgun was located while the parents were outside the residence. This evidence was sufficient to allow the jury to consider these charges and determine if the conduct met the statutory definition of EWOC by the application of the "common sense of the community" standard []. It was for the jury to determine the effect of the presence of a second unloaded firearm and the level of supervision being provided at the time in determining whether this standard was violated. Accordingly, there is no merit to this allegation of error.

Trial Court opinion at 7.

We have little to add to this discussion except to emphasize that Weakland apparently spoke to the police outside before taking them inside to retrieve the firearms since she told them that Schoenfeld "has them there inside the trailer." *See* N.T. at 74. As a result, there was evidence to support that the children were left unsupervised with the firearms in the trailer for a period of time before Weakland and the police entered the trailer to retrieve the firearms.

Moreover, Weakland readily admitted that Schoenfeld put the firearms behind the recliner but left them in open view. *Id*. at 68. Indeed, as the police officer who entered the trailer confirmed, the children knew where the firearms were and were only six feet away from them when they tried to retrieve them. *Id*. at 75-76. Consequently, under these circumstances, we find that the Commonwealth presented sufficient evidence for the jury to find that Schoenfeld threatened his children's physical welfare by leaving a loaded firearm out in the open only a few feet away them. ***See Commonwealth v. Capriotti***, 2021 WL 3836846, *9 (Pa. Super. August 27, 2021) (unpublished

memorandum) (finding sufficient evidence existed to convict defendant of EWOC where he left a loaded firearm on a closet shelf in his 14-year-old son's bedroom).[3]

> As for Schoenfeld's weight of the evidence claim,
>
> [a] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Pa.R.Crim.P. 607[.] Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion.

*Commonwealth v. Rivera*, 238 A.3d 482, 497 (Pa. Super. 2020) (some internal citations omitted).

As noted, Schoenfeld never filed a post-sentence motion challenging the jury's verdict as being against the weight of the evidence. As a result, his claim is waived. Even if preserved, though, we would find his claim meritless, as there are no facts that are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. Indeed, as discussed, while Weakland subjectively felt that the children were not in danger by having a loaded firearm nearby, there was also evidence that the children were left unsupervised while Weakland and Schoenfeld were still outside and, what is more, that the children knew where the firearms were because one of them tried to retrieve them when the police entered the

---

[3] *See* Pa.R.A.P. 126(b) (providing that unpublished non-precedential memorandum decisions of the Superior Court filed after May 1, 2019, may be cited for persuasive value).

residence. Accordingly, even if it had been properly preserved, his claim is meritless.

## III.

Schoenfeld also alleges that the trial court abused its discretion in denying a motion for mistrial that he made after a police officer testified that Schoenfeld was committed for a mental health evaluation, even though the trial court promptly gave a curative instruction.

The trial court concisely summarized the facts pertaining to this claim:

> At the end of a lengthy response to a question from the Court, [Officer] Sanders testified, "I kind of thought something was a little bit strange with that so that's why I said later on when I had called Crisis, we took him down to the hospital. The Crisis worker signed the papers committing —." N.T. 3/7/22 p. 92. Defense counsel immediately objected to this testimony and the objection was sustained. *Id*. pp. 92-94. The Court then directed the jury to disregard any testimony related to medical treatment but that they could consider the other portion of [Officer] Sanders' answer. *Id*. pp. 93-94. In denying the Motion the Court explained that it believed the prompt curative instruction resolved the matter but afforded counsel the opportunity to request additional instruction on the issue during the final jury instruction. *Id*. pp 102-03.

> The Court stated that such additional instruction was at defense counsel's discretion but cautioned that it may serve to highlight the testimony to the jury. *Id*. Defense counsel agreed stating that "[y]eah. And there's even an argument, I think, Your Honor, that it was in such passing that so -- said in such a low voice, I don't even know if everybody heard it to be honest." *Id*. p. 103. Finally, defense counsel elected to have no further instruction provided to the jury on the issue. *Id*. p. 134.

TCO at 8-9.

We note that:

the remedy of a mistrial is an extreme one. ... It is primarily within the trial court's discretion to determine whether Appellant was prejudiced by the event that forms the substance of the motion. Finally, it must be remembered that a mistrial is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial.

***Commonwealth v. Lease***, 703 A.2d 506, 508 (Pa. Super. 1997) (citations omitted). A mistrial is, therefore, only warranted when the prejudice to the movant cannot be ameliorated to ensure a fair trial. "A mistrial is not necessary where cautionary instructions are adequate to overcome any possible prejudice." ***Commonwealth v. Cash***, 635 Pa. 451, 137 A.3d 1262, 1273 (2016) (citation omitted).

After review, we find no relief due on this claim. As the trial court explains, it sustained the objection and instructed the jury to disregard the police officer's fleeting reference to Schoenfeld being committed for mental health at the hospital. As we have often explained, juries are presumed to follow the trial court's cautionary instructions, and we find noting in the record that would cause us to depart from that well-established axiom here. *See* ***Commonwealth v. Fletcher***, 41 A.3d 892, 896 (Pa. Super. 2012) (holding that a mistrial was properly denied when, during a two-day jury trial with multiple eyewitnesses, the Commonwealth asked an improper question on cross-examination and a cautionary instruction was issued). Accordingly, we find no abuse of discretion related to the trial court's denial of Schoenfeld's motion for mistrial.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/29/2023