J-S44034-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| GERALD BUSH | : | |
| | : | |
| Appellant | : | No. 1123 EDA 2025 |

Appeal from the PCRA Order Entered March 31, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003748-2023

BEFORE: LAZARUS, P.J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED MARCH 18, 2026**

Gerald Bush ("Bush") appeals from the order denying, without a hearing, his Post Conviction Relief Act ("PCRA")[1] petition arising from his *nolo contendere* plea to two counts of endangering the welfare of a child ("EWOC").[2] Because the PCRA court properly dismissed his claims that the plea lacked a sufficient factual basis, we affirm.

The factual and procedural history is as follows: In May 2023, Bush was watching his two granddaughters, eleven months and two years old, respectively. *See* N.T., 10/31/23, at 14. Bush had a disabled knee which interfered with his ability to get up steps. *See id*. at 10, 19. Bush left his granddaughters upstairs in a partially filled bathtub and went downstairs to

_____

[1] *See* 42 Pa.C.S.A. §§ 9541–9546.

[2] *See* 18 Pa.C.S.A. § 4304(a)(1).

tidy up. *See id*. at 14-15. His eleven-month-old granddaughter was later found face-down in the bathtub. *See id*. at 15. The child was taken to the Children's Hospital of Philadelphia and stayed there for several weeks; she now requires ongoing care as a result of this incident. *See id*.; *see also* PCRA Court Opinion, 6/25/25, at 1.

Bush was arrested and charged with numerous crimes, including EWOC. In October 2023, Bush, who was represented by counsel ("plea counsel"), pleaded *nolo contendere* to two counts of EWOC.[3] Bush signed a written plea colloquy acknowledging: plea counsel had explained the elements of the offenses to him; he had a right to a jury trial; and the Commonwealth would have to prove him guilty beyond a reasonable doubt at a trial. *See* Written Plea Colloquy, 10/31/23, at 2, 4, 6. During the oral colloquy, Bush stated he was "confused" because he had a "disability with [his] knee" that had prevented him from going back up the stairs in time. *See* N.T., 10/31/23, at 10-11. The trial court acknowledged Bush's assertion but noted that when Bush left the young children in the tub, anything could have happened and, unfortunately, did happen. *See id*. at 13. The court explained the tragic circumstances of the case were relevant to mitigation at sentencing. *See id*.

---

[3] The first count of EWOC was graded as a felony of the second degree for the eleven-month-old who drowned; the second was graded as a felony of the third degree for her two-year-old sibling. *See* 18 Pa.C.S.A. § 4304(b)(1)(iii), (2).

at 11-13.[4]  Bush affirmed that he was aware of his right to a jury trial, he was

pleading of his own free will, nobody forced him to enter his plea, and he had

no additional questions for the court.  *See id*. at 8-9, 14.  After a brief

summation of the factual basis, as set forth above, Bush agreed to the facts

and the court accepted his plea.  The trial court thereafter sentenced Bush to

an aggregate term of eleven-and-one-half to twenty-three months of

incarceration, with immediate parole, and a consecutive one year of

probation.[5]  Bush did not file a post-sentence motion or a direct appeal.

In July 2024, Bush filed a timely *pro se* PCRA petition.  The PCRA court

appointed counsel, who filed an amended petition asserting that Bush "was

improperly induced by [plea] counsel to plead no-contest, that he is not guilty

of EWOC, [and] that the events that transpired were tragic, but not criminal."

Amended PCRA Petition, 10/24/24, at 2.  The Commonwealth responded that

Bush had not pleaded a basis to find plea counsel ineffective or an unlawfully

induced plea.  In January 2025, the PCRA court issued a notice of intent to

dismiss pursuant to Pa.R.Crim.P. 907, to which Bush did not respond.  In

---

[4] While there was no agreement as to sentencing, the trial court indicated that the parties would ask for concurrent sentences on the two EWOC counts.  *See* N.T., 10/31/23, at 7.  Additionally, the trial court suggested it was "open" to imposing a "non-custodial" sentence.  *Id*. at 12.

[5] During his sentencing allocution, Bush repeated that his knee was "just too messed up," and he agreed with the court that he should respect his physical limitations moving forward, and that he should have done so.  *See id*. at 21.

March 2025, the PCRA court dismissed Bush's petition as meritless.  Bush

timely appealed.  **See** PCRA Court Opinion, 6/25/25, at 2.[6]

On appeal, Bush raises the following issue for our review:

Did the PCRA [c]ourt err in dismissing the PCRA petition, for the following reasons:

Plea[]counsel was ineffective for advising [Bush] to plead no-contest to the offenses of EWOC (F2) and EWOC (F3), as the facts did not sustain any crime, but rather a tragic accident.  The facts did not sustain that [Bush] acted with [the] requisite *mens rea*, which is "knowingly[."  Bush] did not act in a manner that the child would drown in the bathtub, or that a child would be endangered.  As [Bush] committed no crime, his plea was entered into unknowingly, unintelligently, and involuntarily[.]

Bush's Brief at 8 (some spacing and formatting altered, bold omitted).

We review an order denying PCRA relief without a hearing under the

following standard:

Appellate review of a PCRA court's dismissal of a PCRA petition is limited to the examination of whether the PCRA court's determination is supported by the record and free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.  This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding.  In contrast, we review the PCRA court's legal conclusions *de novo*.

**Commonwealth v. Maxwell**, 232 A.3d 739, 744 (Pa. Super. 2020) (*en banc*)

(internal citations and quotation marks omitted).

_____

[6] Bush filed a Pa.R.A.P. 1925(b) statement *nunc pro tunc*, which the PCRA court accepted and addressed in a separate opinion.  **Cf**. **Commonwealth v. Presley**, 193 A.3d 436, 441 (Pa. Super. 2018).

To obtain relief for the ineffective assistance of plea counsel, the petitioner must plead and prove the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). It is well settled that

> [t]o succeed on an ineffectiveness claim, the petitioner must demonstrate by a preponderance of evidence that (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice as a result of counsel's action or inaction. Counsel is presumed to be effective, and the burden is on the [the petitioner] to prove otherwise. A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim.

*Commonwealth v. Felix*, 303 A.3d 816, 819-20 (Pa. Super. 2023) (citations and quotation marks omitted)

> In the context of a plea:
>
> The law does not require that [the petitioner] be pleased with the outcome of his decision to enter a plea of guilty.[7] Instead, the [petitioner] must show that counsel's deficient stewardship resulted in a manifest injustice, for example, by facilitating entry of an unknowing, involuntary, or unintelligent plea. The voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. Therefore, allegations of ineffectiveness in connection with the entry of a . . . plea will serve as a basis for relief only if the ineffectiveness caused [the petitioner] to enter an involuntary or unknowing plea.

---

[7] A plea of *nolo contendere* is treated as a guilty plea in terms of its effect upon a given case, and the standards for voluntariness and withdrawal of the plea are the same. *See Commonwealth v. Pier*, 182 A.3d 476, 479 n.3 (Pa. Super. 2018).

*Id*. at 820 (citation omitted).[8]

Lastly, when considering the validity of a plea, we recognize that the plea colloquy "must affirmatively demonstrate that the defendant understood what the plea connoted and its consequences." *Felix*, 303 A.3d at 820 (citation omitted). Once a defendant has entered a plea:

> it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him. In determining whether a . . . plea was entered knowingly and voluntarily, a court is free to consider the totality of the circumstances surrounding the plea. Furthermore, nothing . . . precludes the supplementation of the oral colloquy by a written colloquy that is read, completed, and signed by the defendant and made a part of the plea proceedings.

*Id*. (citation omitted).

Bush maintains the PCRA court erred in dismissing his PCRA petition. He reasons as follows: the facts were insufficient to sustain convictions for EWOC (that is, he was not guilty of EWOC); his entry of his plea was, therefore, unknowing because plea counsel was ineffective and had no reasonable basis for either advising or permitting him to enter his plea; and the resulting manifest injustice entitled him to withdraw his plea and proceed to a trial where he could be acquitted. *See* Bush's Brief at 13-15, 23, 27.

_____

[8] A second basis for challenging a plea under the PCRA requires the petitioner to plead and prove that his plea was "unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent." 42 Pa.C.S.A. § 9543(a)(2)(iii). Unlike a claim of ineffective assistance of plea counsel, Section 9543(a)(2)(iii) requires the petitioner to prove his innocence. *See Commonwealth v. Lynch*, 820 A.2d 728, 732 (Pa. Super. 2003).

To support his threshold contention that his plea lacked a sufficient factual basis, he argues he could not have committed EWOC because he lacked the requisite *mens rea*. **See id**. at 21-23 (citing 18 Pa.C.S.A. § 302(b)(2)). He asserts he did not act knowingly—*e.g.*, in a manner where it was practically certain harm would occur when he left the children unsupervised in the tub. **See id**. at 23-24. Specifically, he claims that he "left to briefly tidy up[, and] miscalculated out of carelessness[,]" but was not criminally culpable because he did not act "with any belief that it was practically certain that his grandchild would drown." **Id**. at 24.

The PCRA court rejected Bush's contentions, concluding that "the record shows that there was a sufficient factual basis for his plea." PCRA Court Opinion, 6/25/25, at 4. As the court explained:

> In the instant case, [Bush,] who was the only adult watching the children, left two children under the age of three in a partially-filled bathtub while he went to another floor of the home to tidy up. The presence of water in a bathtub combined with the children's young age . . . poses an inherent risk of downing. Moreover, [Bush] has problems with his knee that prevented him from responding quickly in an emergency. [Bush] recognized on the record that his physical limitation played a role in the events . . . . Therefore, the facts are sufficient to show that [Bush] was aware of his duty to protect the children, that he was aware the children were in a situation that threatened their physical welfare, and that he took actions so insufficient that he could not reasonably protect the children's welfare.

**Id**. at 6.

We agree with the PCRA court that Bush is due no relief. At the outset, we note that Bush's belated contention he was not guilty of EWOC does not

rebut the totality of the circumstances establishing that his plea was knowing, intelligent, and voluntary. **See Commonwealth v. Morrison**, 878 A.2d 102, 108 (Pa. Super. 2005). At the hearing, Bush acknowledged that plea counsel explained the elements of the offenses to him, and Bush affirmed that he was entering his plea freely and of his own will and waiving his rights to a trial. **See** Written Plea Colloquy, 10/31/23, at 2, 4, 6; N.T., 10/31/23, at 8-9, 14.

While Bush alludes to the ineffective assistance of plea counsel, he neither pleaded, nor argued in this appeal, a specific representation or misrepresentation. In any event, Bush's threshold contention—that the factual basis of his plea was insufficient to sustain his convictions for EWOC— relies on a misapprehension of the law governing EWOC and the applicable *mens rea*. Section 4304 of the defines EWOC as follows: "A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S.A. § 4304(a)(1).[9]

---

[9] Bush does not dispute that he was a person supervising the care of the children. Further, our Supreme Court has held that the EWOC statute must be construed to effectuate its broad purpose of sheltering children from harm. **See Commonwealth v. Lynn**, 114 A.3d 796, 818 (Pa. 2015). Furthermore, "[t]he common sense of the community, as well as the sense of decency, propriety and the morality which most people entertain is sufficient to apply the statute to each particular case, and to individuate what particular conduct is rendered criminal by it." **Id**. (citations and quotation marks omitted).

Section 302 of the Crimes Code defines the *mens rea* of "knowingly" as follows:

> (2) A person acts knowingly with respect to a material element of an offense when:
>
> > (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and
> >
> > (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

18 Pa.C.S.A. § 302(b)(2).

Bush asserts that, in the context of EWOC, the "result" referred to in Section 302(b)(2)(ii) is the actual harm to a child (instantly, the drowning). However, an actual injury to a child is not an element of EWOC. **See Commonwealth v. Krock**, 282 A.3d 1132, 1139 (Pa. Super. 2022). The focus of EWOC is knowingly endangering the welfare of the child by violating a duty, and our courts have never held that the *mens rea* element requires a defendant be practically certain his conduct will cause a particular harm. **See Commonwealth v. Smith**, 956 A.2d 1029, 1038 (Pa. Super. 2008) (*en banc*); **see also Commonwealth v. Howard**, 257 A.3d 1217, 1227 (Pa. 2021) (Opinion Announcing the Judgment of the Court) (stating that the "result" of EWOC is the creation of a dangerous **situation** and emphasizing the requirement "that the accused be 'aware that it is practically certain that his conduct will cause such a result' **does not** require that he be certain of a particular harm or injury") (emphasis added).

Critically, at no point does Bush dispute that: (1) he was aware that he had a duty to supervise an eleven-month-old infant and a two-year-old toddler in a bathtub partially filled with water; (2) he was aware that leaving such young children unsupervised in the tub endangered their safety; and (3) he either failed in his duty of supervision or took actions so lame or meager that they could not have reasonably been expected to protect the children's safety. To the contrary, children in such early developmental phases of their lives are particularly vulnerable, unable to protect themselves, and prone to accidents, such that leaving them unsupervised in even minimal levels of water in a bathtub is an obvious and inherently dangerous situation. **See generally Lynn**, 114 A.3d at 818. Thus, there is no merit to Bush's contention that the factual basis of his plea was insufficient. **See Commonwealth v. Nulph**, No. 196 WDA 2023, 2024 WL 551990 (non-precedential memorandum at *5) (Pa. Super. 2024) (concluding the evidence was sufficient to sustain an EWOC conviction where Nulph "undisputedly left the two-year-old victim unsupervised on a porch that led to the uncovered pool, and there was no functioning safety gate[,]" and, when investigating the child's drowning in the pool, "police discovered numerous dangerous conditions in [Nulph's] yard").[10]

---

[10] **See** Pa.R.A.P. 126(b) (non-precedential memoranda filed by this Court after May 1, 2019, are citable for persuasive value). Moreover, Bush's appellate argument suggests facts not in the record. For example, he contends he only left the children briefly to "tidy up." However, he points to no record evidence about why he left the children in the tub or for how long. His assertion that his conduct was akin to a momentary lapse in attention contradicts the record

*(Footnote Continued Next Page)*

For these reasons, we conclude Bush failed to meet his burden of showing his plea was unknowing or that the factual basis of his plea was insufficient. The record supports the PCRA court's findings of fact and we discern no error in its legal conclusion that Bush's claims merited no relief. *See Maxwell*, 232 A.3d at 744; *see also Felix*, 303 A.3d at 819-20; *Lynch*, 820 A.2d at 732.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/18/2026

---

evidence that he went to a different floor of the residence "to take care of other things" but then could not get back up to the stairs to reach the children "in time."